IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CATHERINE RAY, on behalf of herself
and all others similarly situated,                    PLAINTIFF

v.                        Case No. 08-5025

AMERICAN AIRLINES, INC.,

                                                  DEFENDANT

## ORDER

     This case concerns the frustrations surrounding an airplane trip described as a nightmare and the Plaintiffs efforts to obtain compensation for it. Plaintiff alleges that she was confined to an aircraft against her will and forced to endure poor conditions while it was on the ground for some eleven (11) hours. In response, Defendant contends that it has no responsibility because the Plaintiff's claims are preempted by the Airline Deregulation Act and the Federal Aviation Act.

     Before the Court are the Plaintiff's Motion for Reconsideration of this Court's Order Granting Defendant Leave to File an Amended Notice of Removal (Doc. 31) and Brief in Support (Doc. 32), and Defendant's Response (Doc. 36), Defendant's Motion to Strike (Doc. 27) and Brief in Support (Doc. 28), and Plaintiff's Response (Doc. 34), Plaintiff's Motion to Remand (Doc. 14), and Brief in Support (Doc. 15), and Defendant's Response (Doc. 26), Defendant's Motion to Transfer Venue (Doc. 12), and Brief in Support (Doc. 13), and

AO72A
(Rev. 8/82)

Plaintiff's Response (Doc. 24), and Defendant's Motion to Dismiss (Doc. 7), and Brief in Support (Doc. 8), Plaintiff's Response (Doc. 25) and Defendant's Reply (Doc. 33).

On December 27, 2007, Plaintiff initiated a class action suit against the Defendant in Washington County, Arkansas Circuit Court alleging false imprisonment, outrage or intentional infliction of emotional distress, negligence, breach of contract, and fraud or deceit, all surrounding a prolonged airline trip. As of this date, no effort has been made to certify this matter as a class action. On January 31, 2008, Defendant removed the action pursuant to both the Class Action Fairness Act of 2005, U.S.C. § 1332(d), and this Court's diversity jurisdiction, 28 U.S.C. §§ 1332(a) and 1367(a). On February 7, 2008, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint (Doc. 1) for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and 9(b). On February 26, 2008, Defendant filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of Texas. On February 28, 2008, Plaintiff filed a motion to remand this action to the Washington County, Arkansas Circuit Court. On March 17, 2008, Defendant filed a motion for leave to file an amended notice of removal, which was granted on March 19, 2008. On March 28,

2

2008, Defendant filed a motion to strike certain portions of the Affidavit of Catherine Ray and Declaration of Paul S. Hudson filed by the Plaintiff in support of her motion to remand.  On April 7, 2008, Plaintiff filed a motion for reconsideration of this Court's order granting Defendant's motion for leave to file an amended notice of removal.  For the reasons reflected herein, Plaintiff's Motion for Reconsideration is **DENIED**; Defendant's Motion to Strike is **DENIED**; Plaintiff's Motion to Remand is **DENIED**; Defendant's Motion to Transfer Venue is **DENIED**; and Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## A.    Background

Plaintiff, Catherine Ray, brings this action based on the experiences on a December 29, 2007 American Airlines flight from Oakland to Dallas-Fort Worth airport ("DFW airport"), which was diverted to Austin, Texas ("Austin") because of weather conditions at DFW airport.  Plaintiff alleges that she was confined to the aircraft against her will and forced to endure deplorable conditions on the ground in Austin for approximately eleven (11) hours by the Defendant.

Plaintiff seeks compensatory and punitive damages for false imprisonment, outrage or intentional infliction of emotional distress, negligence, breach of contract, fraud or deceit.  Plaintiff contends that Defendant's actions or

failures to act serve as the basis for her claim, including Defendant's failure to cancel or delay flights due to bad weather; Defendant's refusal to permit passengers to leave the airplane while it was on the runway in Austin; Defendant's failure to "supply the parked aircraft with essentials of water, food, sanitary waste removal, light, and breathable or fresh air at normal temperatures" while stranded on the runway in Austin; Defendant's failure to unload checked baggage when it finally allowed the passengers off the airplane in Austin at 9:30 p.m.; Defendant's refusal to provide overnight lodging, meals, ground transportation, telephone or other passenger expenses and losses caused by its diversion and stranding; and Defendant's refusal to allow some passengers to board their connecting flights in Dallas upon arrival the following morning.

Plaintiff alleges that the delays resulted from Defendant's "intentional or negligent lack of personnel, equipment, and planning for ordinary weather disruptions." (Complaint ¶ 28). Further, Plaintiff alleges that Defendant's decision to keep the passengers on the plane during the delays was to "avoid expenses and lawful obligations to passengers associated with strandings, diversions, and canceled flights and for [Defendant's] and its officers, employees, agents and stockholders own pecuniary gain at the expense of Plaintiff

4

and other passengers." (Complaint ¶ 29).

Defendant moves this Court to dismiss the Plaintiff's claims for failure to state a claim upon which relief can be granted. Defendant contends that the Plaintiff's state law claims are preempted by the Airline Deregulation Act and the Federal Aviation Act, and that her complaint fails to state a claim under the applicable state law. (Doc. 7 ¶ 1).

**B.   Standard of Review**

In determining whether a motion to dismiss should be granted, the court must test the legal sufficiency of a complaint. A motion to dismiss should only be granted if it appears from the face of the complaint that the plaintiff cannot prove any set of facts to support his claims for relief. *Schaller Tel. Co. V. Golden Sky Sys., Inc.,* 298 F.3d 736, 740 (8th Cir. 2002). In considering a motion to dismiss, the Court takes all allegations in the complaint as true and views the facts most favorably to the non-moving party. *Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 405 (8th Cir. 1999).

When a dispositive issue of law precludes a plaintiff from being entitled to relief regardless of the allegations of fact, the plaintiff might prove, Rule 12(b)(6) authorizes a court to dismiss that plaintiff's claims. *Neitzke v. Williams* 490 U.S. 319, 326-327 (1989); *Hishon v. King & Spalding,* 467

AO72A
(Rev. 8/82)

U.S. 69, 73 (1984).   In order to streamline litigation and dispense with needless discovery and factfinding, courts are required to dismiss legal claims that are destined to fail regardless of whether they are nearly viable.   *Neitzke*, 490 U.S. at 326-27 (stating "[n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable . . . . [A] claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.").

**C.   Discussion**

**I. Motions to Reconsider, Remand, and Strike**

On January 31, 2008, Defendant removed this matter from Washington County, Arkansas Circuit Court pursuant to both the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) and diversity of citizenship and supplemental jurisdiction, 28 U.S.C. §§ 1332(a), and 1367(a).   Thereafter, Defendant filed a motion to transfer venue, and Plaintiff filed a motion to remand.   On March 19, 2008, this Court allowed the Defendant to amend its notice of removal.   Plaintiff subsequently filed a motion asking the Court to reconsider its order allowing the Defendant to amend its notice of removal.

An action filed in state court may be removed by the defendant to federal district court if the district court could have exercised original jurisdiction over the matter.

6

28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). Additionally, federal district courts have original jurisdiction of any civil action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action between citizens of different states. 28 U.S.C. § 1332(d). The claims of the individual class members of a class action shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(6).

A case must be remanded back to state court if at any time before judgment it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 886 (8th Cir. 2002). A defendant who seeks to remove a case to federal court bears the burden of proving that the requirements for diversity jurisdiction have been met. *Hatridge v. Aetna Casualty &*

7

*Surety Co.*, 415 F.2d 809, 814-15 (8th Cir. 1969).  Where, as here, the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum, the removing party must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Trimble v. Asarco, Inc.,* 232 F.3d 946, 959 (8th Cir. 2000) ("[T]he party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence.").  When a suit is commenced in state court there is a strong presumption that the plaintiff has not claimed an amount sufficient to establish federal jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 290 (1938).

Plaintiff contends that this case should be remanded to state court because Defendant had not established that the amount in controversy is $75,000, as required to support diversity jurisdiction for her individual claim, and that it is unknown at this time whether the amount in controversy for the entire class will exceed $5,000,000.  Plaintiff also contends that the Court should not have allowed the Defendant to amend its notice of removal with a settlement letter.  Plaintiff argues that the Court failed to allow her adequate time to respond to the Defendant's motion, pursuant to the Court's local rule 7.2(b).  The Court will consider the Plaintiff's motion for reconsideration as her response to the

8

Defendant's motion to amend its notice of removal.

In her motion for reconsideration, the Plaintiff contends that a settlement letter can not be used to establish the amount in controversy because settlement communications are privileged and the federal rules of evidence prohibit such use.   Additionally, Plaintiff argues that she offered to settle for less than the amount required for diversity jurisdiction and that she does not demand more than that amount in her Complaint, and therefore, the Defendant has failed to prove the requisite amount in controversy.   The settlement letter, which was sent to Defendant by Plaintiff's counsel, demands that Defendant pay Plaintiff $50,000 for her individual claim, and $5,000,000 for the class action claim, as well as $74,900 for Katherine Hanni, another passenger who has filed an identical claim in district court in California ("Hanni case"), and $5,000,000 for the class action claim in the Hanni case.

Plaintiff contends that settlement communications are privileged and that Rule 408 and Rule 403 of the Federal Rules of Evidence prohibit the use of settlement letters to establish the amount of a claim.   Rule 408 states that a settlement offer is not admissible "to prove liability for or invalidity of a claim or its amount."   Several courts have concluded that Rule 408 does not prevent them from considering

9

a settlement demand for purposes of assessing the amount in controversy.  *See Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir. 2002); *Rising-Moore v. Red Roof Inns, Inc.,* 435 F.3d 813, 816-17 (7th Cir. 2006); and *Vermande v. Hyundai Motor America, Inc.,* 352 F.Supp. 2d 195, 199 (D.Conn. 2004).  We agree that Rule 408 does not prohibit the use of a settlement letter to establish the amount in controversy.

Plaintiff requests the court use its discretion under Rule 403 to prohibit the settlement letter as it is prejudicial evidence.  Defendant contends that this argument has no merit because the letter is before the Court for the limited purpose of determining jurisdiction and not evidence.  The Court agrees.   The Plaintiff next argues that the settlement letter is privileged, and should not have been made public.  The Court finds that the settlement letter may be privileged, but it can be used for the limited purpose of determining the amount in controversy.  Accordingly, the Court has reconsidered its order of March 19, 2008, and concludes again that the Defendant may file an amended notice of removal.

The Court now considers the Plaintiff's motion for remand.  Plaintiff contends that her individual claim is less than the $75,000 necessary to establish diversity jurisdiction, and that it is unknown whether the class action

10

claim will exceed $5,000,000, as required by the Class Action Fairness Act of 2005.  Defendant alleges that the Plaintiff seeks damages in excess of the jurisdictional requirements, and asks the Court to consider the settlement offer sent by Plaintiff's counsel on March 3, 2008, as proof of such, as well as an affidavit filed by an experienced Fayetteville lawyer, who states in his professional opinion, that Plaintiff will incur up to $47,500 in prosecuting her alleged breach of contracts claims.  The settlement letter proposes a tiered settlement for class members which would pay $10,000 for each passenger confined for 7 hours or more, and $2,000 for each passenger confined between 2 and 4 hours, and attorney fees of $250,000 or 10% of the total amount paid to plaintiffs.

Defendant contends that the settlement letter, included with its amended notice of removal, as well as the Plaintiff's demand for punitive damages and attorneys fees, is proof that the amount in controversy in this matter exceeds $75,000 and $5,000,000 for the respective claims. Plaintiff attempts to avoid diversity jurisdiction in this matter by stating in a post-complaint affidavit that she is "not seeking individual damages in this lawsuit in excess of $74,999 including attorney fees and punitive damages." (Doc. 14-2 ¶ 5). However, it has long been recognized that, for purposes of establishing diversity jurisdiction, tortious injuries may be

11

quantified as tantamount to damages amounts.  The Court finds
sufficient allegations in the Plaintiff's complaint to support
a potential recovery exceeding $75,000 in this case.

Although Plaintiff initially claimed that the putative
class included 12,000 passengers, her counsel now states that
he believes that number to be excessive.  Defendant argues
that if one applies only the least costly tier of the proposed
settlement, *i.e.,* the $2,000 tier, to half of the 12,000
passengers the Complaint alleges were in the putative class,
the amount in controversy is $12,000,000.  Defendant contends
that the Plaintiff's settlement demand for $5,000,000 for each
of the two class action claims filed is proof that the amount
in controversy exceeds $5,000,000.  Plaintiff concedes that
she does not have sufficient information at this stage in the
proceeding to determine whether the amount in controversy
exceeds $5,000,000 for the class action claim.

Defendant argues that the $5,000,000 settlement demand is
not the amount in controversy, but rather the amount it would
take to settle the case.  In support, the Defendant refers to
the settlement letter which provides: "settlement...would
relieve [Defendant] of the risk of a much larger jury
award...".  Defendant claims that statements made in the
settlement letter demonstrate that the amount in controversy
exceeds $75,000 and $5,000,000.  Although the Eighth Circuit

12

Court of Appeals stopped short of determining whether a post-complaint settlement offer alone was sufficient to establish the requisite amount in controversy, the Court did conclude that a letter was "further support for the valuation of the claims." *In re Minnesota Mut. Life Ins. Co. Sales Practice Litigation,* 346 F.3d 830, 834-35 (8th Cir. 2003). Accordingly, we find that a settlement letter can be considered for the limited purpose of determining the amount in controversy for jurisdictional purposes.

Defendant contends that although Plaintiff does not allege a specific amount in controversy for the putative class she seeks to represent, one can ascertain an amount in controversy from Plaintiff's allegations in the Complaint and Affidavit filed in support of the motion to remand. Specifically, Defendant refers to Plaintiff's allegation that "each of the plaintiffs [meaning the putative class members] suffered individual damages sufficient to satisfy the jurisdictional requirements of the circuit court in Arkansas but insufficient to satisfy the jurisdictional requirements in federal diversity cases." {Complain ¶ 68). Defendant contends that this allegation is proof that Plaintiff intends to place up to $74,999 in controversy for each plaintiff, and considering that the putative class could be as large as 12,000 plaintiffs, the amount in controversy for the putative

13

class could be much higher than the $5,000,000 needed for federal jurisdiction.  The Court finds that the Defendant has established that the amount in controversy is sufficient to establish jurisdiction in this Court in either an individual case or a class action.

The Court denies Defendant's motion to strike portions of the declarations of Catherine Ray and Paul Hudson.  The Court did not rely on any improper or inadmissable evidence in deciding these motions.

## II.    Motion to Transfer Venue

On February 26, 2008, Defendant filed a motion asking the Court to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) governs the ability of a federal district court to transfer a case to another district.  This provision reads: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1994).  The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice.  *Terra Intern., Inc. v. Mississippi Chemical Corp.*,

14

119 F.3d 688, 691 (8th Cir. 1997).  The Eighth Circuit has recognized that motions for transfer under 1404(a) "require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  *Id.* at 691.  Defendants bear the burden of proving the alternate forum is more convenient than the one chosen by the plaintiffs.  *Arkansas Right To Life State Political Action Committee v. Butler*, 972 F.Supp. 1187, 1193 (W.D.Ark. 1997). In doing so, defendants must overcome the general principle that the plaintiffs' choice of forum should be disturbed only if the balance of convenience strongly favors the defendant. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, (1947).

Defendant contends that every section 1404(a) factor supports the transfer to the Northern District of Texas, except plaintiff's choice of forum, which it argues should be given little deference because this matter is a nationwide class action.   Defendant argues that when a plaintiff volunteers to represent a class of plaintiffs who do not reside in the plaintiff's chosen forum, that plaintiff's choice of forum is given lesser weight.  *See Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987); and *Jenkins v. H & R Block, Inc.,* No. 4:06-CV-00365-GTE, 2006 U.S. Dist. LEXIS 35112 (E.D. Ark. May 17, 2006).  Defendant contends that Plaintiff's choice of venue should be given little weight because very few

15

of the passengers on her flight reside in Arkansas, and there is no connection between this forum and the events of which she complains.

Defendant contends that Texas would be a more convenient forum for this matter because all of Plaintiff's claims arose in Texas, numerous witnesses reside in Texas, most of Defendant's documentary evidence is in Texas, and Texas law will govern Plaintiff's claims.  Plaintiff responds that Arkansas is the more convenient forum, and argues that she entered into a contract with the Defendant in Arkansas, Defendant does business in Arkansas, the district court in Arkansas can apply Texas law, and the factors of section 1404 and plaintiff's choice of forum outweigh transfer to Texas. Plaintiff argues that a transfer to Texas is not more convenient for the parties as a whole, and would serve only to shift the inconvenience from the Defendant to the Plaintiff. She contends that this matter will require witnesses, from all over the United States, to travel, and that it will be easier and less expensive for them to travel to Fayetteville, Arkansas.  Additionally, she argues that although the claim may have arose in Texas, most of the events did not occur there.

Plaintiff concedes that venue in Texas would be more convenient for the Defendant, since its headquarter is located

16

there, but contends that the Court should not shift the convenience from the Plaintiff to the Defendant. Plaintiff claims that accessability of records is not a factor this Court should give much weight because modern communications, overnight delivery, and computers have made the transfer of records less difficult. Further, Plaintiff contends that Arkansas choice of law rules will apply even if the matter is transferred to Texas, so there is nothing to gain by transferring the matter. Plaintiffs' choice of forum is given "great weight" and should rarely be disturbed. *Houk v. Kimberly-Clark Corp.,* 613 F.Supp. 923, 927 (W.D.Mo. 1985); *Arkansas-Best Freight System, Inc. v. Youngblood,* 359 F.Supp. 1125, 1129 (W.D.Ark. 1973). This is especially true where the plaintiff is a resident of the district in which suit was brought. *Houk,* 613 F.Supp. at 927. In the case at bar, Plaintiff chose to file in this district and she is a resident of this district. In view of the fact that venue is a procedural rule of convenience, the convenience of the aggrieved party should be first accommodated. *Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27 (8th Cir. 1973).

After considering all the relevant factors, the Court finds that the Defendant has not met its burden of proof to justify a transfer of venue away from the Plaintiff's choice

17

of forum and resident district.  The Defendant has failed to demonstrate that this matter would be any more convenient for the parties and witnesses in the Northern District of Texas than in this district.  Rather, it appears that a transfer of venue to Texas would only serve to shift certain conveniences to the Defendant.  The parties and a majority of the witnesses will be required to travel regardless of whether the venue is in Dallas, Texas or Fayetteville, Arkansas.  Although this matter may later be certified as a class action, the Court does not find that fact justifies a transfer to another district.  The proposed class members reside in states across the country and will be required to travel to either venue. Additionally, the Court does not find the inaccessibility of records, or application of another state's substantive law require that this matter be transferred to another district. In considering the interests of justice, this Court finds that the Plaintiff's choice of forum is entitled to great weight, and that factors of judicial economy and mitigation of party expenses require that this matter not be transferred. Accordingly, the Defendant's motion to transfer venue is denied.

### III. Motion to Dismiss

Defendant contends that Plaintiff's claims should be dismissed because they are preempted by the Airline

18

Deregulation Act ("ADA"), 47 U.S.C. § 41413(b)(1), and the Federal Aviation Act ("FAA"), and for failure to state a claim upon which relief can be granted.

###### A.   Preemption

A fundamental principle of the Constitution is that Congress has the power to preempt state law. *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372 (2000). Pursuant to the Supremacy Clause, state law that conflicts with federal law has no effect. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992).  The Supreme Court has held that federal preemption of state law can be either expressed or implied.  *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 95 (1983).  It is well established that within Constitutional limits Congress may preempt state authority by so stating in express terms.  *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm.,* 461 U.S. 190, 203 (1983). In the absence of an express congressional command, state law can be preempted impliedly.  *Cipollone,* 505 U.S. at 516. There are two types of implied preemption, field preemption and conflict preemption.  *Crosby,* 530 U.S. at 372.

There are three situations in which Courts will find a state law field-preempted.  First, where "Congress' intent to supercede state law altogether may be found from a scheme of federal regulation so persuasive as to make reasonable the

19

AO72A
(Rev. 8/82)

inference that Congress left no room to supplement it."
*Pacific Gas & Elec. Co. v. State Energy Resources Conservation
& Dev. Comm.,* 461 U.S. 190, 204 (1983).  Second, where "the
Act of Congress [] touch[es] a field in which the federal
interest is so dominant that the federal system [can] be
assumed to preclude enforcement of state laws on the same
subject."   *Id.*   Lastly, where "the object sought to be
obtained by the federal law and the character of the
obligations imposed by it may reveal the same purpose."  *Id.*
Even where Congress has not entirely displaced state
regulation in a specific area, state law is preempted to the
extent that it actually conflicts with federal law.  Such a
conflict arises when compliance with both federal and state
regulations is a physical impossibility, or where state law
stands as an obstacle to the accomplishment and execution of
the full purposes and objectives of Congress.  *Id.*

In determining whether a state action is preempted by
federal law, a Court must first look at Congress' intent.
*Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 209 (1985).  The
purpose of Congress is the ultimate touchstone.   *Id.*   To
discern Congress' intent we examine the explicit statutory
language and the structure and purpose of the statute.  *Gade
v. National Solid Wastes Management Association,* 505 U.S. 88,
101 (1992).

20

### 1.   Airline Deregulation Act of 1978

Defendant contends that Plaintiff's causes of action are expressly preempted by the Airline Deregulation Act of 1978, which prohibits states from enacting or enforcing a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier[1]. 49 U.S.C. § 41713(b)(1).  The Supreme Court has interpreted the phrase "related to" as preempting all state laws having a connection with or reference to airline rates, routes, or services.  *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378-79 (1992).  However, neither the Supreme Court nor the Eighth Circuit have interpreted the term "services" in the context of the ADA.  In *Botz v. Omni Air International,* 286 F.3d 488, 495 (8th Cir. 2002), the Eighth Circuit noted that the circuits were split regarding the definition of "service", but did not settle on a definition.  Botz, a flight attendant, was terminated for refusing a flight assignment she believed violated federal safety regulations.  *Id.* at 490.  The Eighth Circuit held that Botz's claims under the Minnesota Whistle Blower statute were preempted by the ADA because the

---

[1]      Initially, the ADA's preemption provision was codified at 49 U.S.C.App. § 1305(a)(1) and read in pertinent part as follows: "[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier...."

21

enforcement of the statute would authorize a flight attendant to refuse assignments and protect her when she does. *Id.* at 495. The Court held that such protections "have a forbidden connection with an air carrier's service under any reasonable interpretation of Congress' use of the word 'service.'" *Id., citing Charas v. Trans World Airlines,* 160 F.3d 1259, 1265-66 (9th Cir. 1998). Although the Court did not define the term "service", it did note that "it is apparent from the preemption provision's plain language that it has a broad preemptive effect on state law claims involving air-carrier prices, routes, or services." *Botz,* 286 F.3d at 494.

The Third and Ninth Circuits have interpreted "service" as "the prices, schedules, origins, and destinations of the point-to-point transportation of passengers, cargo, or mail," but not the "provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities." *Charas,* 160 F.3d at 1261; and *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,* 164 F.3d 186, 194 (3rd Cir. 1998). The Fourth, Fifth, Seventh, and Eleventh Circuits have interpreted "service" more broadly to include boarding procedures. See *Branche v. Airtran Airways, Inc.,* 342 F.3d 1248, 1257-59 (11th Cir. 2003) (stating that "services" includes "the physical transportation of passengers ... and the incidents of that transportation over which air carriers

22

compete"); *Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir. 1998) ("Undoubtedly, boarding procedures are a service rendered by an airline."); *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir. 1995) (defining service as contractual features of air transportation, including "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself"); *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir. 1996) (adopting definition set forth in *Hodges).*

In *Rowe v. New Hampshire Motor Transport Association,* 128 S.Ct 989, (2008), the Supreme Court interpreted the scope of a preemption provision related to the deregulation of trucking, which was modeled after the ADA's preemption provision. The Court held that federal law preempts a state law that "forbids licensed tobacco retailers to employ a 'delivery service' unless that service follows particular delivery procedures." *Id.* at 995. The state regulation required tobacco retailers to utilize a delivery service which provides a special recipient-verification service to ensure that tobacco is not getting into the hands of minors. *Id.* at 993-94. The Court in *Rowe* held that the state statute was preempted because it would require carriers "to offer tobacco

23

delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate." *Id.* at 996. The Supreme Court's holding in *Rowe* appears to interpret the term "service" to extend beyond prices, schedules, origins, and destinations.

However, this case and *Charas* are distinguishable from *Rowe* in that they both involve injured passengers seeking compensation for past tortious conduct, while *Rowe* involved a challenge to a state statute which created an affirmative requirement on the part of the carrier. An affirmative regulation which restricts a carrier's business functions would likely result in a "direct substitution of [the state's] governmental commands for competitive market forces." *Rowe,* 128 S.Ct. at 995. However, allowing an individual to recover for injuries tortiously caused by a carrier does not create any such regulation.

Defendant contends that Plaintiff's state law causes of action for false imprisonment, intentional infliction of emotional distress, negligence, breach of contract, and fraud are preempted by the ADA. Plaintiff responds that Congress did not intend to prohibit the use of state tort law to provide remedies to passengers faced with situations similar

24

to those Plaintiff faced as Defendant's passenger. In *Morales,* the Supreme Court described Congress' goal in enacting the ADA as an effort to promote "maximum reliance on competitive market forces" that would further "efficiency, innovation, and low prices" as well as "variety [and] quality...of air transportation services." 504 U.S., at 378. In support of its limited definition of "service", the Ninth Circuit concluded in *Charas,*

> "when Congress enacted federal economic deregulation of the airlines, it intended to insulate the industry from possible state economic regulation as well.  It intended to encourage the forces of competition.  It did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct."

160 F.3d at 1266.  The Ninth Circuit reasoned that "[t]o interpret 'service' more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does.  It seems clear to us that this is not what Congress intended." *Id.*  We agree with the reasoning of the Ninth Circuit and we do not believe that Congress intended to preempt all state claims for tortious

25

acts of air carriers.[2]

Accordingly, we find that Plaintiff's claims, which are not controlled by specific regulations, are not preempted by the ADA.  Plaintiff's claims involving compensation for lodging, meals, ground transportation and other expenses are preempted.  The Department of Transportation has implemented regulations which require air carriers to compensate passengers when flights are overbooked, but it has not extended such protection for weather related cancellations. Finally, Plaintiff's breach of contract claims which allege a breach of the implied covenant of good faith and fair dealing based on Defendant's Customer Service Plan and Conditions of Carriage are preempted.  The Supreme Court has held that the ADA "confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."  *American Airlines, Inc., v. Wolens,* 513 U.S. 219, 233 (1995).

   **2.   Federal Aviation Act of 1958**

Defendant next contends that Plaintiff's claims are

---

[2]    Defendant's position would appear to be the same if the Plaintiff was kept on the plane for eleven (11) days instead of eleven (11) hours.

26

field-preempted by the Federal Aviation Act of 1958, codified at 49 U.S.C. §§ 40101, and its implementation of Federal Aviation Regulations ("FARs"), which preempt the field of passenger health and safety on commercial aircraft. The FAA was enacted in response to "a series of fatal air crashes between civil and military aircraft operating under separate flight rules." *United States v. Christensen*, 419 F.2d 1401, 1404 (9th Cir. 1969). Congress's purpose in enacting the FAA was "to promote safety in aviation and thereby protect the lives of persons who travel on board aircraft." *In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400, 406 (9th Cir. 1983). Defendant contends that Plaintiff is trying "to utilize state law to impose standards on air carriers that would establish new legal requirements for health and safety services for passengers during lengthy diversions and delays of flights." (Doc. 8 at 24). Plaintiff's claims which are based on Defendant's decision to re-route her flight due to safety concerns and the Federal Aviation Administration's decision to shut down the DFW airport for bad weather are preempted by the FAA. The Court finds that these decisions are directly related to safety issues currently regulated by the FAA. However, the Court concludes Plaintiff's claims

27

which are based on Defendant's actions after the flight was diverted and on the ground in Austin are not preempted.  The Defendant alleges that the Department of Transportation is currently considering whether additional regulation is necessary in this field.   While the Court applauds the Department of Transportation's concern, we find that there are currently no regulations in place which address the health and safety of air carrier passengers during lengthy delays on the ground, and the Plaintiff's claims based on such are not preempted.

### B.   Failure to State a Claim

Alternatively, Defendant contends that Plaintiff's claims should be dismissed for failure to state a claim.  A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a).  Dismissal under Rule 12(b)(6) is only appropriate when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007).  Plaintiff plead her claims under Arkansas law.   However, Defendant argues that Texas law should apply to Plaintiff's claims.  For purposes of this motion, the Court will consider both State's

28

laws.

    **1.**   **False Imprisonment**

Pursuant to either Arkansas or Texas law, false imprisonment consists of the "intentional confinement of a person, without consent or lawful privilege." *See Dick v. State,* 364 Ark. 133, 141 (Ark. 2005); and *Wal-Mart Stores, Inc. v. Rodriquez*, 92 S.W.2d 502, 506 (Tex. 2002). Defendant contends that Plaintiff has failed to allege facts from which it could be determined that (1) she validly withdrew her consent to remain on the aircraft, (2) a duty arose on Defendant's part to release her, or (3) that Defendant lacked federal legal authority over its aircraft and those on board until the flight crew opened the passenger door of the aircraft, released the fasten safety belt warnings, and notified passengers that it was safe to deplane. Plaintiff alleges that "with the exception of a few passengers whose destination was Austin", Defendant "refused to permit passengers to exit the aircraft even though buses and available gates at the terminal were available" to them. (Complaint ¶ 19). Further, Plaintiff alleges that Defendant misrepresented the reasons for confining the passengers on the plane. (Complaint ¶ 27). Considering all allegations in the

29

complaint as true and viewing the facts most favorably to the Plaintiff, the Court finds that the Plaintiff has offered sufficient proof at this stage in the proceeding to support a claim for false imprisonment.  Accordingly, the Defendant's motion to dismiss the false imprisonment claim is denied.

## 2.   Intentional Infliction of Emotional Distress/Outrage

Pursuant to either Texas or Arkansas law, to prove a claim for intentional infliction of emotional distress or outrage, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.  *See Key v. Coryell,* 86 Ark.App. 334, 336 (Ark.App. 2004); and *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).  The conduct must be so extreme as to be "beyond all possible bounds of decency, and utterly intolerable in a civilized community," *Id.,* and the distress so severe "that no reasonable person could be expected to endure it."  *Id.*  The Court finds that Plaintiff has alleged facts sufficient to support a claim for intentional infliction of emotional distress or outrage at this stage in the proceeding.  Although Plaintiff alleges that

30

Defendant initially re-routed her flight in response to inclement weather, and that many other flights were similarly disrupted, she argues that the long delay on the ground could have been avoided.  Under these circumstances, a jury could find that the Defendant's actions are so extreme and outrageous as to be "beyond all possible bounds of decency, and utterly intolerable in a civilized community." Accordingly, Defendant's motion to dismiss the Plaintiff's intentional infliction of emotional distress or outrage claim is denied.

### 3.   Negligence

Under Texas law, if a defendant's conduct violates a contractual duty, rather than a duty independently imposed by law, there is no negligence claim.  *See DeWitt County Elec. Cooperative, Inc. v. Parks,* 1 S.W.3d 96, 105 (Tex. 1999) (a contract which "spells out the parties' respective rights," governs any dispute, not common-law negligence).  Under Arkansas law, "if the facts warrant, a party to a contract may sue on an independent tort claim, but may not transform a breach of contract action into a tort claim by alleging the breach was motivated by malice.  The breach itself is simply not a tort." *Quinn Companies, Inc. v. Herring-Marathon Group,*

31

*Inc.,* 299 Ark. 431, 432 (Ark. 1989). "Legitimate tort claims can arise out of contractual relationships in some situations; however, unless the conduct involves a foreseeable, unreasonable risk of harm to the plaintiff's interests, a breach of contract is generally not treated as a tort if it consists merely of a failure to act (nonfeasance)." *Lehman Properties, Ltd. Partnership v. BB & B Const. Co., Inc.,* 81 Ark.App. 104, 110 (Ark.App. 2003). In Arkansas, the essential elements of a cause of action for negligence are that the plaintiff show a duty owed and a duty breached, and that the defendant's negligence was a proximate cause of the plaintiff's damages. *See Wagner v. Gen. Motors Corp.,* 370 Ark. 268, 271 (Ark. 2007).

Defendant argues that Plaintiff's negligence claims are identical to her breach of contract claims, and that she fails to identify any duty owed to her by Defendant, independent of the duties set forth in Defendant's Conditions of Carriage. However, Arkansas courts have permitted tort claims based on contractual duties "when the misconduct involves a foreseeable, unreasonable risk of harm to the plaintiff's interests." *Westark Specialities, Inc. v. Stouffer Family Ltd., Partnership,* 310 Ark. 225, 233 (Ark. 1992). Plaintiff

32

alleges that Defendant owed her and other passengers a duty of due care to use best efforts to bring passengers safely to their destinations, to plan for weather related disturbances in its flight operations, and to refrain from mistreatment of them with unjustified involuntary confinement, deprivation of passengers' baggage and stranding in remote locations. Plaintiff further alleges that Defendant breached those duties and that its negligence was the proximate cause of damage and losses to her. The Court finds that Plaintiff has plead allegations sufficient to support a negligence claim under Arkansas law, and that it was foreseeable that Defendant's conduct could have resulted in an unreasonable risk of harm to the plaintiff's interests. Accordingly, the Defendant's motion to dismiss the Plaintiff's claim for negligence is denied.

**4. Breach of Contract**

Defendant contends that Plaintiff's breach of contract claim, based on Defendant's Customer Service Plan and Conditions of Carriage, should be dismissed because it fails as a matter of law. Defendant argues that Plaintiff's reliance on it's Customer Service Plan is misplaced because the plan expressly states that it "does not create contractual

33

or legal rights."  (Doc. 8-2 at 67).  The Court agrees. Additionally, Defendant contends that the claim based on Defendant's Conditions of Carriage fails because all of the damages she alleges are expressly excluded by the document's terms.  Defendant argues that it does not guarantee its schedule and expressly disclaims any liability for delays as a result of bad weather.  Plaintiff responds that her complaint "provides sufficient notice of the alleged breaches," but agrees to "provide Defendant with a more definite statement setting forth further details [of] the breaches of contract [claim]." (Doc. 25 at 28).  The Court finds that the Plaintiff's complaint fails to allege sufficient facts regarding Defendant's failure to comply with specific terms of the Conditions of Carriage, and therefore does not state a claim for breach of contract.  Accordingly, the Defendant's motion to dismiss the Plaintiff's breach of contract claim is granted with prejudice.

   **5.   Fraud**

   Defendant contends that Plaintiff's fraud claim is not plead with sufficient particularity and should be dismissed. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

34

particularity." Fed. R. Civ. P. 9(b). This particularity requirement demands a higher degree of notice than that required for other claims. *U.S. ex rel. Costner v. U.S.,* 317 F.3d 883, 888 (8th Cir. 2003). 'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir. 1982). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Costner*, 317 F.3d at 889.

Plaintiff contends that she has sufficiently plead allegations of fraud to support her claim. The complaint alleges that Defendant knowingly deceived Plaintiff with false statements and misrepresentations and concealment of material information in relation to the reasons for the confinement, diversions, and schedule changes, and that Defendant had a special relationship with the Plaintiff as it possessed all relevant information and power over the person and baggage of its passengers, that Defendant had a duty to disclose material

35

information related to its delays and diversion, which it failed to do, and that Plaintiff relied to her detriment on the false and deceptive statement of Defendant, and suffered damages thereby.  (Complaint ¶¶ 60-65).

Under either Texas or Arkansas law, to establish fraud, five elements must be proven: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance.  *See Riley v. Hoisington*, 80 Ark.App. 346, 351 (Ark.App. 2003); and *Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.,* 88 F.3d 347, 359 (5th Cir. 1996). Additionally, Texas law requires that Plaintiff demonstrate that she relied on the representations to her detriment. *See Sanchez v. Liggett & Myers, Inc.,* 187 F.3d 486, 493 (5th Cir. 1999).

As the basis for her claim, Plaintiff alleges that Defendant "falsely assert[ed] to passengers and the public that aircraft were not able to take off due to weather or congestion" (Complaint ¶¶ 27 & 63).  However, Plaintiff fails

36

AO72A
(Rev. 8/82)

to identify who made this statement, how she intends to prove that the statement was false when it was made, or how she relied on the representation.  The Court finds that Plaintiff has failed to sufficiently state a claim for fraud. Accordingly, the Defendant's motion to dismiss the Plaintiff's fraud claim is granted with prejudice.

### C.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Reconsideration is **DENIED;** Defendant's Motion to Strike is **DENIED;** Plaintiff's Motion to Remand is **DENIED;** Defendant's Motion to Transfer Venue is **DENIED;** and Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  In her response to the motion to dismiss, Plaintiff states that she wishes to add additional claims to her Complaint.  Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), a plaintiff may amend his complaint once *as of right* at any time before he has been served with a "responsive pleading."  Defendant has not filed an Answer to the Complaint, and its Motion to Dismiss is not a "responsive pleading" under Rule 15.  *See Winfrey v. Brewer,* 570 F.2d 761, 764 (8th Cir. 1978) ("A motion to dismiss is not a 'responsive pleading' for purposes of [Rule 15].")  However, Plaintiff has already amended her Complaint

37

once, and therefore, must seek leave of the Court to amend it again.  The Court finds that justice requires that Plaintiff be given leave to file a Second Amended Complaint to remedy any defects in her pleading and include any additional claims.

IT IS SO ORDERED this 2nd day of June 2008.


/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge

38