IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CATHERINE RAY, individually and on
behalf of all others similarly situated                    PLAINTIFF


v.                              Case No.  08-5025

AMERICAN AIRLINES, INC                                     DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Defendant's motion for summary judgment (Doc. 69) and supporting documents (Docs. 70-71); and Plaintiff's response (Doc. 83) and supporting brief (Doc. 84). Also before the Court is Plaintiff's Motion for Continuance of Defendant's Summary Judgment Motion (Doc. 85) and Defendant's Motion to Strike (Doc. 91).

For the reasons set forth herein, Defendant's motion (Doc. 69) is GRANTED and Plaintiff's Complaint is DISMISSED with prejudice. Further, Plaintiff's Motion for Continuance (Doc. 85) and for Class Certification (Doc. 62) and Defendant's Motions to Strike and to Stay Discovery (Docs. 66, 91, 96, 102 & 107) are DENIED AS MOOT. Plaintiff's Motion for Joinder of Parties (Doc. 105) is also DENIED.

## STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c). The burden

1

AO72A
(Rev. 8/82)

of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986). "The non-moving party, however, must still "present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in [their] favor." *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1003-4 (8th Cir. 2005) (quoting *Gregory v. City of Rogers, Ark.*, 976 F.2d 1006, 1010 (8th Cir. 1992)). Summary judgment is appropriate where a plaintiff fails to present evidence sufficient to create a jury question as to an essential element of his claim. *Turner v. Honeywell Fed. Manuf. & Tech.*, 336 F.3d 716 (8th Cir. 2003).

## BACKGROUND

Plaintiff, Catherine Ray, brought this action based on the experiences on a December 29, 2006, American Airlines flight from Oakland to Dallas-Fort Worth airport ("DFW airport"), which was diverted to Austin, Texas ("Austin") because of weather conditions at DFW airport. Plaintiff alleged that she was confined to the aircraft against her will and forced to endure deplorable conditions on the ground in Austin for approximately nine and one-half (9 ½) hours by the Defendant.

Plaintiff originally sought compensatory and punitive damages for false imprisonment, outrage or intentional infliction of

emotional distress, negligence, breach of contract, and fraud or deceit.  Plaintiff contends that Defendant's actions or failures to act serve as the basis for her claim, including Defendant's failure to cancel or delay flights due to bad weather; Defendant's refusal to permit passengers to leave the airplane while it was on the runway in Austin; Defendant's failure to "supply the parked aircraft with essentials of water, food, sanitary waste removal, light, and breathable or fresh air at normal temperatures" while stranded on the runway in Austin; Defendant's failure to unload checked baggage when it finally allowed the passengers off the airplane in Austin at 9:30 p.m.; Defendant's refusal to provide overnight lodging, meals, ground transportation, telephone or other passenger expenses and losses caused by its diversion and stranding; and Defendant's refusal to allow some passengers to board their connecting flights in Dallas upon arrival the following morning.

Plaintiff alleged that the delays resulted from Defendant's "intentional or negligent lack of personnel, equipment, and planning for ordinary weather disruptions." (First Amended Complaint ¶ 28).  Further, Plaintiff alleged that Defendant's decision to keep the passengers on the plane during the delays was to "avoid expenses and lawful obligations to passengers associated with strandings, diversions, and canceled flights and for [Defendant's] and its officers, employees, agents and stockholders

own pecuniary gain at the expense of Plaintiff and other passengers." (First Amended Complaint ¶ 29).

The Court previously ruled that Plaintiff's claims involving compensation for lodging, meals, ground transportation and other expenses were preempted by the Airline Deregulation Act ("ADA"), 47 U.S.C. § 41413(b)(1), but that Plaintiff's claims, which were not controlled by specific regulations, were not preempted (Doc. 54, p. 26). Plaintiff's claims which are based on Defendant's decision to re-route her flight due to safety concerns and the FAA's decision to close the DFW airport for bad weather are preempted by the Federal Aviation Act ("FAA"). (Doc. 54, p. 27) However, the Court found there were no regulations in place to address the health and safety of air carrier passengers during lengthy delays on the ground (Doc. 54, p. 28). Therefore, Plaintiff's claims which are based on Defendant's actions after the flight was diverted and on the ground in Austin are not preempted. *Id.* The Court dismissed Plaintiff's breach of contract and fraud claims for failure to state a claim. Accordingly, Plaintiff's claims for negligence, false imprisonment and intentional infliction of emotional distress remain.

Defendant moves for summary judgment on Plaintiff's remaining three claims based upon Plaintiff's pleadings and deposition testimony; her husband, Paul Heap's, deposition testimony, and the affidavit of John Terrell which authenticates the "American

4

Airlines Conditions of Carriage."

**ARGUMENT**

## Choice of Law

Defendant contends that Texas law is applicable to Plaintiff's claims.  Despite the fact that Plaintiff argues that the law of the diversion states should apply in her motion for class certification, she contends in her summary judgment response, that Arkansas law should apply to her individual claims.

In determining which state's law should apply, this Court applies the choice of law principles followed by the forum state - Arkansas.  *St. Paul Fire and Marine Ins. Co. v. Building Const. Enterprises, Inc.*, 526 F.3d 1166, 1167 (8th Cir. 2008).  Under the doctrine of *lex loci delicti*, the law of the place where the wrong took place is the proper choice of law.  *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838 (Ark. 2006).  However, in *Wallis v. Mrs. Smith's Pie Co.*, 550 S.W.2d 453 (Ark. 1977), the Arkansas Supreme Court adopted a test involving the five choice-influencing factors promulgated by Dr. Robert A. Leflar.  Those factors are :(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law.  *Id.*  In *Schubert v. Target Stores, Inc.*, 201 S.W.3d 917 (Ark. 2005), the Arkansas Supreme Court addressed the proper choice-of-law analysis.  In *Schubert*,

5

the court concluded the case had significant contacts with Arkansas, and as a result, applied the substantive law of Arkansas.

The first factor, predictability of results, favors Texas law. Assuming this is certified as a class action as Plaintiff proposes, the Court has two alternatives: (1) to apply the substantive law of the six different states to which the planes in question were diverted or (2) to apply the law of each passenger's state of domicile, resulting in the application of virtually every state law in the country. The second factor, maintenance of interstate order, also favors Texas law. Defendant's headquarters is in Texas, and the tortious acts are alleged by Plaintiff to have occurred in Texas. Third, simplification of the judicial task does not favor either law. It is no more difficult for this Court to apply Texas tort law as opposed to Arkansas law. Fourth, advancement of the forum's governmental interests does not favor either state. While Arkansas obviously has an interest in protecting its residents; Texas, too, has an interest in protecting residents of all states who travel inside its borders. Fifth and finally, the application of the better rule of law, does not favor either state.

The Court finds that Texas has a more significant relationship to the parties and subject litigation and that Leflar's five factors also favor Texas law. While Plaintiff may

6

reside in Arkansas, the allegations supporting Plaintiff's claims involve actions/inactions that occurred in Texas.

**Intentional Infliction of Emotional Distress (IIED)**

_____Defendant seeks summary judgment on Plaintiff's IIED claim as (1) IIED is a gap-filler tort that can only be maintained when no other traditional common law or statutory causes of action cover the alleged facts; (2) Plaintiff did not suffer "severe" emotional distress; and (3) Defendant's alleged acts do not rise to the level of extreme and outrageous conduct.

_____To recover on a cause of action for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004). However, the Supreme Court of Texas has described the tort of intentional infliction of emotional distress as:

> [f]irst and foremost, a gap-filler tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress. The tort's clear purpose...was to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied. We cautioned, however, that the tort was a gap-filler tort that should not be extended to circumvent the limitations placed on the recover of mental anguish damages under more

7

established tort doctrines.

*Id. citing Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62 (Tex. 1998)(internal citations and quotations omitted).  The court further explained that "[i]n creating the new tort, we never intended that it be used to evade legislatively-imposed limitations on statutory claims or to supplant existing common law remedies."  *Id.*  A plaintiff cannot recover on a claim for intentional infliction of emotional distress that "is merely incidental to the commission of some other tort."  *Standard Fruit & Vegetable Co.*, 985 S.W.2d at 68.  Even where the plaintiff is unable to recover on his primary claim, he cannot maintain an action for intentional infliction of emotional distress where the "gravamen" of his complaint may be addressed by an existing statutory or common-law remedy.  *Hoffmann-LaRoche, Inc.*, 144 S.W.3d at 447-48.

The Court finds that the gravamen of Plaintiff's claims are for negligence and false imprisonment; therefore, she is not entitled to an IIED claim under Texas law.  Further, even if so entitled, the Court would still grant summary judgment as she cannot show that Defendant's conduct was "extreme and outrageous" or that she suffered "severe" emotional distress.

**False Imprisonment**

Defendant moves for summary judgment on Plaintiff's claim of false imprisonment contending: (1) Plaintiff and Mr. Heap admitted

8

that Defendant twice offered them the choice to deplane, however, they elected not to do so; and (2) Plaintiff never revoked her consent to remaining on the aircraft.   Plaintiff contends that Defendant "deceived" Plaintiff into remaining on the airplane, therefore, her detention was without consent.

    Pursuant to Texas law, the elements of false imprisonment are (1) willful detention, (2) without consent, and (3) without authority of law.  *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502 (Tex. 2002).  Under the facts of this case, the Court finds that Plaintiff's claim that she was falsely imprisoned must fail.

    First, Plaintiff cannot show that the detention was without consent. In her deposition, Plaintiff testified that she was twice offered a chance to deplane but that she was told she would "be on [her] own", and she did not want any further expenses, such as a car rental. (Doc. 84-1, pp. 3-4, 13). Plaintiff further stated that she never told the pilot or the flight attendants that she wanted to deplane (Doc. 84-1, p. 12-13); therefore, the detention cannot be considered willful on behalf of Defendant.

    It is Plaintiff's position that she did not revoke her consent to remain on the airplane as Defendant deceived her into remaining on the airplane.  Plaintiff stated that she remained on the airplane because the pilot continued to express, every thirty or forty minutes, that they would continue their flight to Dallas, as soon as the weather cooperated.   (Doc. 84-1, pp. 3, 8).

AO72A
(Rev. 8/82)

However, Plaintiff's husband, Paul Heap testified that it was his understanding that, at some point during the delay, the pilot was restricted from continuing the flight to Dallas due to FAA regulations regarding flight hours, but that they could not get the airplane to a gate as the ground crew could not operate due to lightning in the area.  (Doc. 69-2, pp. 7-8).  Plaintiff confirmed that about midway through the delay, there was "a lot of rain", "some wind" and lightning in Austin.  (Doc. 84-1, p. 12).  Therefore, it appears that Plaintiff understood why the pilot could not permit the passengers to deplane on the tarmac and was unable to deliver them to a gate.  Finally, even if Plaintiff had communicated her wish to withdraw her consent and to deplane, Defendant was justified in its detention of the passengers absent some exigent circumstances.  *See Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456 (D.C. Cir. 1990)(noting the "special concerns that attend the incredibly busy and dangerous business of common carrier air transport").  While the Court is sympathetic to Plaintiff and the other passengers' position, and believes that Defendant could and should have handled this situation differently, the facts do not support a claim of false imprisonment.

**Negligence**

Defendant moves the Court to grant summary judgment on Plaintiff's negligence claim as (1) Plaintiff suffered no injury

10

or damages in relation to Defendant's alleged negligence; (2) Defendant owed no duty to Plaintiff; and (3) Defendant did not breach any alleged duty owed to Plaintiff.   To establish a negligence claim, Plaintiff must prove that (1) Defendant owed a duty to her; (2) Defendant breached that duty; and (3) Plaintiff suffered damages proximately caused by the breach.  *Kroger Co. v. Elwood*, 197 S.W.3d 793 (Tex. 2006).   Whether a duty exists is a threshold inquiry and a question of law, and liability cannot be imposed if no duty exists.  *Id. citing Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).   Under Texas law, if a defendant's conduct violates a contractual duty, rather than a duty independently imposed by law, there is no negligence claim.  *See DeWitt County Elec. Cooperative, Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999)(a contract which "spells out the parties' respective rights," governs any dispute, not common-law negligence).

Defendant contends it owed no duty to Plaintiff.   In her First Amended Complaint (Doc. 1-1, p. 19), Plaintiff contends Defendant owed Plaintiff a duty "to use best efforts to bring passengers safely to their destinations, to plan for weather related disturbances in its flight operations, and to refrain from mistreatment of them with unjustified involuntary confinement, deprivation of passengers' baggage and stranding in remote locations." (Doc. 1-1, ¶51).   Of these alleged duties, only the failure to plan for weather related disturbances and stranding in

11

remote locations are potentially actionable here. It is undisputed that Plaintiff arrived safely at her destination and was never deprived of any baggage (Doc. 84-1, pp. 21-23). Further, the Court previously found that Plaintiff's confinement was justified under the circumstances.

American Airlines' Conditions of Carriage constituted a contract between Plaintiff and Defendant. It provides, in pertinent part:

> American will endeavor to carry you and your baggage with reasonable dispatch, but times shown in timetables or elsewhere are not guaranteed and form no part of this Contract... Schedules are subject to change without notice. American is not responsible for or liable for failure to make connections, or to operate any flight according to schedule, or for a change to the schedule of any flight. Under no circumstances shall American be liable for any special, incidental or consequential damages arising from the foregoing.

> AA may, in the event of a force Majeure Event, without notice, cancel, terminate, divert, postpone or delay any flight...

> AA..will provide...timely and frequent updates regarding known delays, cancellations and diversions and will strive to provide the best available information concerning the duration of delays and to the extent available, the flight's anticipated departure time. We are not responsible for any special, incidental or consequential damages if we do not meet this commitment.

> In the case of extraordinary events that result in very lengthy onboard delays, AA...will make every reasonable effort to ensure that essential needs of food (snack bar such as a Nutri-Grain), water, restroom facilities and basic medical assistance are met. We are not responsible for any special, incidental or consequential damages if we do not meet this commitment.

> If a flight is adversely affected by events beyond our control, you are responsible for your own overnight accommodations, meals and incidental expenses.
>
> In extreme circumstances, it is possible that a flight will cancel while on the ground in the city to which it was diverted. When this happens: You will be rerouted on the next AA...flight with available seats or...If we are unable to reroute you, reasonable overnight accommodations will be provided....

(Doc. 8-1, pp. 9, 42-43, 50-51).

Plaintiff must establish both the existence and the violation of a duty owed to her by Defendant to establish liability in tort. *El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex. 1987). It appears that Plaintiff does not complain of any duty of care owed by Defendant separate and apart from the Conditions of Carriage. Therefore, Plaintiff is limited to an action for breach of contract. *See Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274 (Tex. 1996) *citing Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991).

Even if Plaintiff's allegations could be construed as a duty separate and apart from the contract, Defendant had no duty to provide Plaintiff with a stress-free flight environment. *See Farash v. Continental Airlines, Inc.*, 574 F.Supp.2d 356 (S.D.N.Y. 2008). A common carrier is not an insurer of the safety of its passengers but owes them that high degree of care that a very cautious, prudent, and competent person would use under the same or similar circumstances. *Slentz v. American Airlines, Inc.*, 817 S.W.2d 366 (Tex. App. - Austin 1991)(citations omitted). Further,

13

Plaintiff must prove that Defendant's breach of such duty was a proximate cause of damages suffered by her.  Assuming Defendant owed a duty to Plaintiff, Defendant contends it did not breach such duty, and, even if it did, Plaintiff suffered no injury or damages from the breach.

Plaintiff stated although she was provided with sodas and granola bars, she was hungry and thirsty, but never felt dehydrated and did not ask the flight crew to assist her (Doc. 84-1, pp. 7, 24, 26-27).  Plaintiff testified that after approximately six hours on the tarmac, she went to the restroom, and the toilet was not flushing properly and there was no water to wash her hands (Doc. 84-1, p. 9), however, she did not notify a flight attendant or attempt to use another restroom.  Plaintiff stated the airplane was "stuffy", "smelly" and she was "exhausted", but she was not too hot or too cold (Doc. 84-1, pp. 17, 28).  According to Plaintiff, one passenger argued with the flight attendants and yelled at the pilot, and it was "pretty tense." (Doc. 84-1, p. 10).

Plaintiff contends she suffered from "a mild case of claustrophobia", but never received any treatment and that it was stressful to see passengers getting upset and for paramedics to twice board the plane. (Doc. 84-1, pp. 13-14).  Plaintiff stated she had an upset stomach the next morning, which she attributed to not being able to wash her hands (Doc. 84-1, p. 22).

14

_____The only potential damages suffered by Plaintiff for Defendant's alleged negligent actions while on the ground in Austin are emotional distress and an upset stomach she attributes to not being able to wash her hands.  The general rule is that expert testimony is needed to establish causation outside common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662 (Tex. 2007)(citations omitted). *See also, Kaster v. Woodson*, 123 S.W.2d 981 (Tex.Civ.App.-Austin 1938, writ ref'd)("What is an infection and from whence did it come are matters determinable only by medical experts").  Further, Defendant had no duty to provide Plaintiff with a stress-free flight environment. *See Farash, supra.*  Accordingly, Plaintiff cannot show that she suffered any injuries that were proximately caused by Defendant, and her negligence claim must fail.

**Additional Discovery**

Plaintiff claims the motion for summary judgment should not be decided at this time as additional discovery is warranted. Additional discovery is not necessary as the key facts necessary for resolution of Plaintiff's claims are undisputed.  Plaintiff submitted an affidavit of her counsel, Paul Hudson, stating he believes discovery will produce evidence sufficient to survive the motion for summary judgment based upon:

(1) admissions to the court by the defendant and its representatives; (2) public statements of defendant's managers as reported in the media; (3) reports,

investigations, and Congressional testimonies of the Inspector General of the U.S. Department of Transportation on the incident and on defendant's longstanding lack of contingency planning for weather related disruptions of its flight schedule; (4) reports on other stranding incidents by defendant as reported in the media and by the nonprofit organization, the Coalition for an Airline Passengers' Bill of Rights; (5) conversations with and written statements or affidavits from over a dozen passengers directly involved in the incident; (6) defendant's policies, practices and patterns of behavior regarding the incident and other similar incidents of stranding and confinement of passengers for lenghty periods of time in aircraft on the ground, often with inadequate water, food, temperature and air quality, or rest room facilities; (7) documents produced by Kathleen Hanni pursuant to a subpoena duces tecum of the defendant and by Catherine Ray; and (8) the deposition testimony of Catherine Ray, Paul Heap and Kathleen Hanni.

(Doc. 85-1). Much of the information Plaintiff states she is seeking is related to her desire to certify this action as a class action claim. That information is not necessary to a resolution of the motion for summary judgment on Plaintiff's individual claims currently before the Court. Further, much of the information is public information, according to Plaintiff, that may be obtained by avenues other than discovery from Defendant. Further, the Court has considered the deposition testimony of Catherine Ray and Paul Heap. The Court assumes Mr. Hudson possesses any information provided by Kathleen Hanni as he represents her in an identical action in the Northern District of California. Finally, there is no motion to compel currently pending before this Court. Accordingly, Plaintiff's Rule 56(f)

16

Motion for Continuance (Doc. 85) is DENIED and Defendant's Motion to Strike Portions of the Affidavit of Paul S. Hudson (Doc. 91) is DENIED AS MOOT.

After Plaintiff's Motion for Class Certification and Defendant's Motion for Summary Judgment were fully briefed and ripe for the Court's review, Plaintiff moved to amend her complaint to add two Plaintiffs (Doc. 105). Plaintiff seeks to add Michelle Mann and Mark Vail whose flights were diverted to Little Rock, Arkansas; and Austin, Texas, respectively. The Court finds that good cause to amend does not exist at this stage of the proceedings. The Court has determined that Plaintiff may not maintain a class action, as summary judgment is appropriate on her individual claims. Accordingly, Plaintiff's Motion (Doc. 105) is DENIED.

### CONCLUSION

For the reasons reflected above, Defendant's motion for summary judgment (Doc. 69) is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.** Further, Plaintiff's Motions for Continuance (Doc. 85) and for Class Certification (Doc. 62) and Defendant's Motions to Strike and Stay Discovery (Docs. 66, 91, 96, 102 & 107) are **DENIED AS MOOT.** Plaintiff's Motion for Joinder of Parties (Doc. 105) is also **DENIED.**

17

IT IS SO ORDERED this 2nd day of April, 2009.


                              */s/  Robert  T.  Dawson*
                              Honorable Robert T. Dawson
                              United States District Judge

AO72A
(Rev. 8/82)